Sanford H. E. Freund v. Commissioner.
Sanford v. Commissioner
Docket No. 27222.
United States Tax Court
1951 Tax Ct. Memo LEXIS 218; 10 T.C.M. (CCH) 514; T.C.M. (RIA) 51165; May 28, 1951
Paul R. Russell, Esq., 20 Exchange Pl., New York, N. Y., for the petitioner. Graham Loving, Jr., Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner asserted a deficiency in income tax against the petitioner for the year 1945 in the amount of $1,819.89, on the ground that a deduction in the amount of $3,154.27 taken on petitioner's return for legal fees and expenses paid in connection with contempt proceedings against him was not allowable under Section 23 (a) of the Internal Revenue Code. By stipulation, the parties have agreed that the amount of the disputed deduction is $3,055.75. Findings of Fact The petitioner, who resides in Ridgefield, Connecticut, is a member *219 of a New York law firm, and practices law in New York. He has been associated with that firm and predecessor firms for over thirty years. Although he is also a member of the Connecticut bar, he does not appear to have any office in Connecticut or to carry on any practice in that state. He filed his income tax return for the year 1945 with the collector of internal revenue for the second district of New York. In 1941 petitioner married Frances Burns, who, three years earlier, had divorced her husband, Dr. Henry T. Burns, in the New York Supreme Court. The final divorce decree included provisions for the custody of their two girls, the issue of the marriage, then aged five and three; in general it awarded custody to the father during the part of the year that the children would be required to attend school. These provisions have been amended from time to time, and repeated controversies have existed between the divorced parties over the custody of the children. On March 9, 1942, Dr. Burns obtained an order in the New York Supreme Court against Mrs. Freund adjudging her in contempt for her wilful failure to return the children to him in accordance with the provisions of the decree, *220 as amended. On June 29, 1942, the divorce decree was again amended, so as to award "sole custody" of the children to Dr. Burns, with the right in Mrs. Freund to have the children at her residence (in Ridgefield, Connecticut) during specified portions of certain vacations. Thereafter, a further controversy arose by reason of Mrs. Freund's refusal to permit Dr. Burns to take the children, when he called at Mr. and Mrs. Freund's Connecticut home for that purpose on October 3, 1943. Dr. Burns was then entitled to the custody of the children under the order of the New York court, as it then stood. At the same time, on October 3, 1943, there was present at the Freund residence the town constable, who served Dr. Burns with a writ of habeas corpus, returnable in Connecticut, November 5, 1943. The writ had been issued pursuant to a petition filed by Mrs. Freund in a Connecticut court, in which she swore that the children were then being "without law or right, confined and detained by Henry Thomas Burns, their father, contrary to the welfare of the said minors." That allegation was not true, because the children were then in Mrs. Freund's possession. Proceedings were thereafter had in the *221 Connecticut courts, and those courts refused to interfere with the custody orders of the New York court, or to enter any other orders inconsistent with the New York decree. Freund v. Burns, 131 Conn. 380, 40 A. 2d 754. Although Mrs. Freund was represented in the Connecticut proceedings by Smith & Devine, attorneys of Norwalk, Connecticut, petitioner had also entered an appearance and had participated to some extent in that litigation. He never received any fee for his services. Meanwhile, Dr. Burns initiated contempt proceedings against Mrs. Freund in New York, and on November 4, 1943, the Supreme Court of New York adjudged Mrs. Freund guilty of contempt for wilful violation of the custody provisions of the order of June 29, 1942, and, among other things, directed her to return the children to Dr. Burns forthwith. In June 1944, the children not yet having been returned, Dr. Burns brought contempt proceedings in New York against the petitioner herein. Dr. Burns' affidavit in support of the contempt application alleged that punishment of petitioner was sought - "on the ground that he has wilfully aided and abeted [abtted] * * * [Mrs. Freund] in violating the orders *222 and decrees of this court; that he actively participated in the acts of * * * [Mrs. Freund] in removing the children from my custody at such times when I was entitled thereto pursuant to the decrees of this Court; that he has aided and abeted [abetted] * * * [Mrs. Freund] in obtaining and retaining the said children at his home in Ridgefield, Connecticut, beyond the jurisdiction of this Court at such times when I was entitled to their possession; and promoting, assisting in and being a party to many proceedings in New York and Connecticut in an attempt to deprive me of the possession of my children when I was entitled to have them with me, all in violation of the decrees of this Court and with full knowledge of the effect of said decrees." In October 1944, the Supreme Court of New York, upon opposing affidavits, after determining that petitioner was within his legal rights in representing his wife in the various legal proceedings affecting the custody of the children, nevertheless concluded: "* * * in harboring in his home these children * * *, knowing that * * * [Mrs. Freund] in keeping them there was violating the order and decree of June 29, 1942, and of November 4, 1943, * *223 * * [Mr. Freund], an attorney at law, an officer of the court, with a duty to uphold the decrees of the court, was knowingly aiding and abetting * * * [Mrs. Freund] in violating the orders and decrees of this court, and is adjudged guilty of a contempt of court. * * * [Mr. Freund] is fined the sum of $250, to be paid within five days after the entry of the order hereon, and is committed to jail for thirty days. Permission is granted * * * [Mr. Freund] to purge himself of the jail commitment by ceasing to harbor the children and seeing that they are returned to the home of * * * [Dr. Burns] within five days after the entry of the order hereon." An appeal was taken to the Appellate Division of the Supreme Court of New York, and the judgment of the trial court was affirmed by a three to two decision on January 16, 1945. The two dissenting justices based their votes upon the ground that the matter should not have been disposed of upon affidavits and that evidence should have been taken. On February 13, 1945, upon motion for reargument, the judgment of the trial court was reversed four to one, apparently upon the ground previously outlined by the two dissenting justices, and *224 the matter was remitted for a hearing "and for determination on the facts to be adduced at such hearing". Pursuant to the order of the Appellate Division, a trial was thereupon had at which petitioner was represented by counsel but did not testify. The Supreme Court of New York, through Judge Fennelly, again concluded that petitioner was guilty of contempt. The testimony and materials produced at the trial were such as to permit a reasonable inference that petitioner had knowingly played a dominant part in withholding the children from Dr. Burns, in violation of the custody provisions of the New York decrees. The "opinion and decision" of Judge Fennelly was rendered on June 21, 1945, and contained the following paragraphs: "The only fair and reasonable inference to be drawn is that respondent [Mr. Freund] encouraged and was an active participant in harboring these children * * * in his home, knowing that plaintiff [Mrs. Freund] in keeping them there was violating the order and decree of this court. Furthermore, in view of respondent's failure to testify no other inference should be indulged in. Respondent was guilty of a contempt of court. "In addition to this, the respondent, *225 an attorney at law, an officer of the court, with a duty to uphold its decrees, was guilty of a contempt of court, in participating in the habeas corpus proceeding in the manner in which he did. It was a proceeding based on a petition which did not state the facts, and which was designed to thwart the sole custody provision of this court's decree." The order entered June 29, 1945, pursuant to the foregoing "opinion and decision", contained the following: "ORDERED, ADJUDGED AND DECREED that the said motion of the defendant Henry T. Burns to punish the respondent Sanford H. E. Freund as and for a contempt of this court be, and the same hereby is, in all respects granted; and it is further "ORDERED, ADJUDGED AND DECREED that the said Sanford H. E. Freund be, and he hereby is, adjudged guilty of a contempt of court, in that he wilfully aided and abetted the plaintiff [Mrs. Freund] herein in violating the decree of this court, as amended by the order of the Appellate Division of this court, dated June 29th, 1942, and said order of the Appellate Division, and the order of this court dated November 4th, 1943, pertaining to the custody of the infant children of the parties hereto in *226 that respondent [Mr. Freund] encouraged and was an active participant in harboring the children * * * in his home knowing that plaintiff in keeping them there was violating the orders and decrees of this court, and further in that the respondent, an attorney at law, and officer of the court, with a duty to uphold its decrees, participated in a habeas corpus proceeding in the State of Connecticut in the manner in which he did, which proceeding was based on a petition which did not state the facts, and which was designed to thwart the sole custody provision of this court's decree, and that the respondent has failed to satisfactorily explain or excuse his said conduct; * * *." On appeal, the Appellate Division of the Supreme Court of New York, on December 3, 1945, affirmed the order of the lower court, four to one, with certain modifications. Burns v. Burns, 269 App. Div. 1038. Among the modifications was the following: "* * * by striking therefrom so much of the second ordering paragraph [quoted above] as reads: 'and further in that the respondent, an attorney at law, and officer of the court, with a duty to uphold its decrees, participated', and substituting therefor *227 the following: 'as evidenced, in part, by the conduct of respondent, an attorney at law, and officer of the court, with a duty to uphold its decrees, in participating'; * * *." The majority opinion, representing the views of three justices, concluded: "We are of opinion that the proof amply warranted the adjudication of contempt. In itself, however, the participation by appellant in the habeas corpus proceeding did not constitute a violation of the judgment and orders, although such conduct of appellant, including submission of a petition containing a statement which was false, to his knowledge, was properly subject to scrutiny in determining whether or not he had been guilty of contempt by harboring the children of the parties to the action. * * *" A fourth justice concurred, stating: "I concur in modification of the order and remission of the matter to Special Term to have the damages established by legal evidence, with the various items segregated, and including therein expenses caused by the habeas corpus proceedings. The latter could not have been instituted without the perjurious petition prepared and utilized by appellant with knowledge of its falsity. It was an additional *228 factor in his harboring of the children. * * *" The "papers on appeal" constituting the record on the first appeal together with the Appellate Division opinions of January 16, 1945, and February 13, 1945, introduced in evidence in this case as petitioner's Exhibits 1, 3 and 4, and the "papers on appeal" on the second appeal together with the Appellate Division opinions of December 3, 1945, introduced in evidence in this case as petitioner's Exhibits 2 and 5, are hereby incorporated in these findings by reference. Petitioner was not a party to the divorce and custody proceedings in the New York Supreme Court, other than as a respondent in the contempt proceedings. In 1945 petitioner paid an attorney's fee of $2,500 together with court costs, printing bills and other related expenses aggregating $555.85, or a total of $3,055.75, representing legal expenses incurred in defending himself in the New York contempt proceedings. Petitioner's 1945 income from his law practice, his distributive share of the income of his law partnership, amounted to $40,913.84. The contempt proceedings grew out of a situation that was personal to petitioner and his wife, and the fee and expenses set *229 forth in the preceding paragraph did not in fact constitute ordinary and necessary expenses in carrying on any trade or business. Neither did such fee and expenses in fact constitute ordinary and necessary expenses for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Opinion RAUM, Judge: The burden was upon petitioner to show that the expenses in question were deductible. Welch v. Helvering, 290 U.S. 111. We think that burden has not been met, and that the record affirmatively demonstrates that the deduction is not allowable. The expenses in question were personal; they were not proximately related to petitioner's business. His business was the practice of law; he was a partner in a New York law firm; and the expenses herein in no way grew out of the business of that firm. Nor is it accurate to say that they grew out of his practicing law in Connecticut. Although petitioner did take part in the Connecticut proceedings, we are convinced that the essence of the contempt action was his active participation in harboring the children in his home knowing that they were being kept in *230 violation of the New York decrees. It was made clear throughout, in Judge Fennelly's opinions and in the opinions in the Appellate Division, that petitioner was within his legal rights in representing his wife in the Connecticut proceedings. True, there was reference to the fact that petitioner is an attorney and to the part that he played in those proceedings, but a fair reading of the documents in the contempt action leads to the definite conclusion that such facts merely illuminated the contempt of which he was found guilty. The crux of the charge was aiding and abetting his wife in harboring the children in his home in defiance of orders of the New York court. Moreover, even if the Connecticut proceedings did constitute an essential ingredient in the contempt charge, it may well be doubted whether the expenses could be regarded as growing out of petitioner's "trade or business" within the meaning of Section 23 (a) of the Code. The Connecticut proceedings were unrelated to petitioner's legal practice; to the extent that he participated therein, he was merely utilizing his professional skills for a wholly personal objective. Nor are the expenses in question converted into "trade *231 or business" expenses by reason of the alleged injury that petitioner's legal practice might suffer as a result of the notoriety attendant upon the contempt proceedings. The point appears to be a highly dubious one, but, in any event, the record is far from satisfactory in substantiating any such threatened injury. Petitioner admitted that his income was not reduced in any way during the year in which the contempt proceedings were pending. He testified that his practice consisted mostly of corporate law, and there is no basis, upon this record, to conclude, apart from some unsatisfactorily general statements made by petitioner himself, that his personal involvement in the contempt proceedings constituted any substantial threat to his law practice. Since we have concluded that the expenses in question were not incurred by petitioner in carrying on a "trade or business", it becomes unnecessary to consider whether the deduction must be disallowed for the further reason that the expenses were not "ordinary and necessary" within the meaning of Section 23 (a). Petitioner makes an alternative contention that the challenged deduction is allowable as a non-trade or non-business expense *232 under Section 23 (a) (2). We think that those provisions are obviously not applicable to the facts of this case. Decision will be entered for the respondent.